**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CABRINI-GREEN LOCAL ADVISORY COUNCIL, | ) ) ) |
| & | ) ) |
| DOROTHY GAUTREAUX, et al., | ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CHICAGO HOUSING AUTHORITY, et al., | ) ) |
| Defendants. | ) |

No. 96 C 6949

HONORABLE DAVID H. COAR

**MEMORANDUM OPINION AND ORDER**

Now before this court is a motion to compel enforcement of this Court's consent decree of August 30, 2000 ("the decree"), filed by Plaintiffs Cabrini-Green Local Advisory Council and Dorothy Gautreaux ("Plaintiffs" or "LAC") against the Chicago Housing Authority ("Defendant" or "CHA") with respect to a lease provision being used in the Old Town Parkside mixed-income community ("Parkside") under development at Cabrini-Green. Plaintiff claims that it contains language requiring eviction of felony convicts residing in the complex, in a manner that violates the Decree. For the reasons stated below, Plaintiff's motion is GRANTED.

-1-

# BACKGROUND[1]

The parties have been in dispute over the development of Cabrini-Green for over ten years. As a result of prior legal battles, the parties are now moving forward under the standing consent decree issued by this Court, which established guidelines by which CHA can continue to develop the land in question and LAC can be involved in that process and provide oversight. According to that arrangement, this Court has been responsible for facilitating negotiations between the two parties, conducting arbitration where necessary, and ensuring compliance with the decree's terms. Since this approach was undertaken in 2000, the projects at Cabrini-Green have moved forward, with development taking place, guarantees made for limitations on resident displacement and lower-income housing, and general cooperation from both parties.

LAC now moves this Court to compel enforcement of the decree, namely, Section II.A of its terms, which requires that public units be maintained and operated in accordance with all applicable requirements applicable to public housing agencies ("PHAs"). LAC is troubled by a provision included in Park side leases that would allegedly require eviction whenever a resident was found to have been convicted of a felony. The contentious language is found in the lease rider ("rider") at para. 13(c)(9), and states: "For termination of the LEASE, the following procedures shall be followed by LESSOR and the TENANT: ...The LEASE may be terminated...[when] [t]he TENANT or any authorized family member is convicted of a felony." This language was added to the document on August 24, 2006, subsequent to public comment and final CHA Board approval on June 20, 2006, but prior to the closing date of October 9, 2006

---

[1] For a summary of the history of these disputes, see Cabrini-Green Local Advisory Council v. Chicago Housing Authority, 1997 WL 31002, at *1-*4 (N.D. Ill., Jan. 22, 1997). Since that time, however, the development has moved forward significantly.

for the construction of Parkside Phase 1.  2nd Mot. at 2.  Plaintiff alleges that this clause violates the Federal limitation on public housing projects, requiring that leases "not contain unreasonable terms and conditions," 42 U.S.C.A. § 1437d(l)(2), and is contrary to federal law and public policy.

## LEGAL BACKGROUND

This Court has retained jurisdiction over this matter only as far as necessary to enforce the terms of the decree.  A consent decree "is an agreement that the parties desire and expect will be reflected in, and be enforceable as, a judicial decree that is subject to the rules generally applicable to other judgments and decrees." *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 378 (1992) (emphasis added).  "From the standpoint of interpretation, a consent decree is a contract." *Cook v. City of Chicago*, 192 F.3d 693, 695 (7th Cir.1999).

## ANALYSIS

This motion to enforce is brought on the limited grounds that Defendant CHA, by including the contested language in its leases, has failed to operate the public housing units "in accordance with all applicable public housing requirements." 2nd Mot. ¶ 2 (citing Decree § II.A).  Though the parties have only addressed the Public Housing Act of 1937 and its amendment under the Quality Housing and Work Responsibility Act ("QHWRA"), public housing agencies are also guided by the Secretary of the Department of Housing and Urban Development directives found in 24 C.F.R. 966.

As an initial matter, it should be noted that public housing leases are already required to enable property managers to terminate leases based on perceived threats to community safety. The requirement is found in 42 U.S.C. Section 1437d(1)(6), which provides that "[e]ach public

housing agency shall utilize leases which...provide that any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants or any drug-related criminal activity on or off such premises, engaged in by a public housing tenant, any member of the tenant's household, or any guest or other person under the tenant's control, shall be cause for termination of tenancy." However, in the instant case this demand has been met by other clauses in the lease that Plaintiff has not contested. *See* 13(c)(5-6, 12). The contested language found in 13(c)(9), however, would expand termination authority beyond the "drug-related criminal activity" and threats to the "health, safety or right of peaceful of the premises" included in these required terms.

The parties have misstated the requirements under the law and the demands of the rider CHA has advanced. Plaintiff maintains that the language in question "violates federal law governing public housing leases," 2nd Mot. ¶ 5, because it "requires eviction for a resident convicted of any felony," *id.* at 1; *see also* 2nd Mot. Mem. at 2 (referring to the clause as a "[b]lanket eviction for tenants who are convicted of felonies"). While such a clause might in fact violate federal law, as Plaintiff states elsewhere the current language only "*allows* the owner to evict a public housing resident who has been convicted of any felony." *Id.* ¶ 4 (emphasis added). Similarly, Defendant overstates the relevant law, claiming that the contested lease provision "is required by federal law." Opp. Br. at 2. This is not supported by any proffered citation. The only question is whether CHA may choose to give Lakeside managers the discretion to evict for any felony – in addition to their unquestioned "one-strike" eviction powers – or whether that choice is contrary to 42 U.S.C. Section 1437d(l)(2)'s prohibition against "unreasonable terms and conditions" or other federal law.

Plaintiff claims that the clause is overly broad and not related to a legitimate purpose. LAC bolsters this argument with extensive analysis of *Richmond Tenants Org., Inc. v. Richmond Redevelopment and Hous. Auth.*, which requires that "lease terms must be rationally related to a legitimate housing purpose." 751 F. Supp. 1204, 1205-06 (E.D. Va. 1990). According to Plaintiff, moving beyond the one-strike bases for lease termination grants a degree of discretion that cannot be justified under that standard – the required clauses already accomplish any legitimate housing purpose, and the additional, broader language only serves to grant an inappropriate degree of discretion to the property manager. The *Richmond* case is not directly on point and is not binding authority. However, this Court may still give weight to its reasoning , particularly where application to the instant case would not unreasonably burden the developer and would avoid unnecessarily broad lease terms. While there is no denying that safety is one of HUD's primary concerns and that felony convictions might be an effective indicator of housing community dangers, the *Richmond* standard would at least narrow discretion to avoid some of those situations where termination would be untenable. How could a felony conviction for a non-threatening action possibly necessitate lease termination? Why should it be necessary to allow discretionary authority over any instance of a felony, when this clause could very easily be rewritten to include only those drug and violent crimes that might actually pose a threat to the community?

Under the *Richmond* standard, Defendant has completely failed to demonstrate how providing a landlord with the discretion to terminate leases based on such crimes could be "rationally related to a legitimate housing purpose." 751 F. Supp. at 1205-06. CHA claims that "striking the provision now – before it has been implemented – needlessly and prematurely

removes an important tool from the property manager's management portfolio." Opp. Br. at 11. However, Plaintiff is not arguing that managers should not have the tools and the discretion to evict some criminals from the property, but only that their power should not be unfettered. Defendant has failed to identify a single instance of a felony for which 13(c)(9) would allow a lease termination not already provided for by other rider terms, but still "rationally related to a legitimate housing purpose." As Plaintiff points out, seemingly non-threatening violations of the law such as wireless service theft presently fall under 13(c)(9), and it would not be burdensome to redraft the document so that manager discretion would not incorporate every felony in the state of Illinois.

While the above analysis might suggest that the language of 13(c)(9) is unnecessary, however, it is nonetheless necessary to verify that the *Richmond* standard is an appropriate interpretation of PHA regulations. There is little in the statutory language or legislative history to suggest that the Virginia court was incorrect. Plaintiff generally maintains that the language is prohibited along with all "unreasonable terms and conditions" that are contrary to the explicit language of 1437d(l)(2), but the lack of a clear definition of this term demands that we look further to determine the meaning of this requirement. Defendant argues that any felony can reasonably form the basis for termination, and seeks support in QHWRA language extending minimum notice protections and the potential for expedited proceedings to lease terminations resulting from "any drug-related or violent criminal activity *or any felony conviction*." *See* 42 U.S.C. §§1437d(l)(4); d(k) (emphasis added). However, the fact that these requirements are to be applied to "any felony conviction" or even "any activity resulting in a felony conviction" does not mean that lease terminations themselves can be so broadly based. Instead, the language

cited by Defendant means only that where a "felony conviction" forms the basis of an allowable termination under QHWRA – i.e., does not involve "unreasonable terms and conditions" – it will be governed by this additional language. Congress may in fact have had in mind such a broad grant of authority for terminations based on felonies, but that is not explicit in the language of QHWRA and therefore does not itself establish the reasonableness of 13(c)(9).

Plaintiff further argues that QHWRA and its legislative history indicate that lawmakers did not want manager discretion to be as expansive as the language drafted by CHA. In support Plaintiff notes that an earlier version of QHWRA required public housing leases to include grounds for termination based on any "criminal activity on or off the premises," and Plaintiff maintains that the absence of this language from the codified law indicates a reluctance to provide managers with overly-expansive discretion. However, this language does not greatly assist Plaintiff because the instant language is already narrower than that which the legislature rejected, limiting discretion to any "felony*"* rather than the significantly broader "criminal activity." In that sense, the current language is not incompatible with Plaintiff's subsequent statement that "a lease provision that grants a PHA carte blanche to evict tenants for any criminal activity is unreasonable" – that is simply not the sort of term being considered here.

The United States Housing Act of 1937 and subsequent amendments under QHWRA provide de minimis lease language, but do not generally prevent housing authorities from using more expansive terms. Indeed, the amendments of 1997 were seemingly intended to increase public housing agency discretion: "the federal method of overseeing every aspect of public housing by detailed and complex statutes and regulations has aggravated the problem and has placed excessive administrative burdens on public housing agencies; and the interests of low-

income persons, and the public interest, will best be served by a reformed public housing program that...vests in public housing agencies that perform well the maximum feasible authority, direction and control with appropriate accountability to public housing residents, localities, and the general public." *See* House Conf. Report 105-769, 1998 U.S.C.C.A.N. 539, p. 63. This language indeed points toward a general legislative intent to provide PHAs with greater freedom in making tenant decisions.

Nonetheless, the most clear limitation on PHAs contained in the public housing laws is that lease provisions not contain "unreasonable terms and conditions." Whatever else "unreasonable" may mean, it would appear that granting managers the power to terminate leases for felonies irrelevant to any legitimate housing purposes would fall within its scope. Support for this view can be found in HUD Regulations, under which PHA leases must obligate tenants to "abide by *necessary and reasonable* regulations promulgated by the PHA...which shall be posted in the project office and incorporated by reference in the lease." 24 C.F.R. § 966.4(f)(4); *see Lancor v. Lebanon Hous. Auth.*, 760 F.2d 361 (2nd Cir. 1985) (applying the "necessary and reasonable" language to a PHA lease term requiring written approval for overnight guests). Again, this requirement is above and beyond criminal activities related to drugs or threatening to the "health, safety or right to peaceful enjoyment of the premises" that are covered in another subsection. *See* 24 C.F.R. § 966.4(f)(12). These regulations closely parallel the lease requirements under 42 U.S.C. 1437d(l)(2), and therefore provide this Court with support for adopting some idea of necessity into its determination of what terms are reasonable.[2] In light of

---

[2] It is worth noting that, like 42 U.S.C. § 1437, the HUD Regulations once again fail to mention any generalized grant of authority for PHAs to terminate tenancy for felony convictions, but *do* allow for termination based on *flight* from a felony conviction. *See* 24 C.F.R. § 966.4

this, *Richmond*'s "rationally related" standard appears to be an entirely appropriate, less-stringent standard.

Defendant maintains that its clause is in line with this legislative intent and allows for a more flexible process. The lease terms do not make lease terminations for felonies mandatory, but rather give the manager of Lakeside discretion to execute them in those cases. In addition, Defendant maintains that the discretion would not be completely unfettered, as par. 6D of the Decree's "Term Sheet" ensures Plaintiff's involvement in the hiring of the manager making eviction decisions, as well as its inclusion in reviewing adverse actions against residents. Resp. 2nd Mot. at 2. Despite these limited safeguards, Defendant has nonetheless failed to demonstrate that this grant of discretion is appropriate under PHA standards. While this Court agrees with Defendant that the QHWRA amendments had the purpose of "promot[ing] homes that are affordable to low income families in safe and healthy environments," *see* Opp. Br. at 7 (quoting Conf. Rep. 105-769, p. 63), we nonetheless disagree that 13(c)(9) is rationally related to this legitimate purpose.

It should also be noted that Plaintiff makes an effective argument that unnecessarily evicting felons from the Parkside complex is contrary to public policy. With respect to those who have been released from our penal system, it provides no societal benefit to deny them a place to live where their presence does not create a identifiable threat against surrounding residents. It could be also said that the parties have up until now cooperated according to an implied promise of good faith dealing that seems to have been undermined by the insertion of Section 13(c)(9). While this court will not read into the decree's clear terms a general duty to

---

(l)(5)(ii)(B)

negotiate in good faith,[3] there is nonetheless no reason to think that the negotiating process that has proven so effective in the past should not here be able to resolve this situation.

**CONCLUSION**

Plaintiff alleges a violation of the decree predicated on the fact that 13(c)(9) violates public housing law. This Court agrees. The language is in no way required by the 1937 Act or its amendments, and Defendant has not advanced a compelling argument that the unnecessarily broad language is reasonable under PHA standards. For the foregoing reasons, Plaintiffs' motion for enforcement of the consent decree is GRANTED, and the language of clause 13(c)(9) is rendered unenforceable as written in all current and future leases and lease riders related to this matter.

Enter:

/s/ David H. Coar
David H. Coar
United States District Judge

Dated: **January 29, 2007**

---

[3] At present, the parties are only held to a good faith standard with respect to the working group, a body not involved in developing lease terms and therefore not involved in the present action. *See* Decree at I.E.2-3.